UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KYLE T. BRADY | CAUSE NO.: 1:22-CR-47 HAB |

**OPINION AND ORDER**

During the execution of a search warrant, law enforcement found guns and attributed them to Kyle T. Brady. A grand jury indicted Brady, who had previously been convicted of multiple felonies and serious drug offenses, with dealing methamphetamine in violation of 21 U.S.C. §841(a)(1) (Counts 1 and 2), possession of methamphetamine, cocaine and marijuana with intent to distribute in violation of 21 U.S.C. §841(a)(1) (Count 3), possession of a firearm in furtherance of a drug trafficking crime (Count 4), and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 5). Brady is facing an enhanced sentence as an armed career criminal, 18 U.S.C. §924(e). To avoid that designation and its associated harsh penalties, he now moves to dismiss Count 5, arguing that this charge against him violates the Second Amendment. (ECF No. 22). For the following reasons, the Court denies the motion.

**DISCUSSION**

1. **Legal Standard**

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," Fed. R. Crim. P. 12(b)(1), such as a constitutional violation. *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996). When considering a motion to dismiss a criminal indictment (or a particular Count of the indictment), the Court

assumes all facts are true and views them in the light most favorable to the government. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case.").

2. Analysis

Since the Supreme Court's opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), this Court has considered and rejected constitutional challenges to § 922(g)(1), which criminalizes the possession of a firearm by a felon. "This conclusion is shared by the overwhelming majority of federal courts to review this question, including a thus far unanimous consensus among the Judges of this District who have confronted the question." *United States v. Keosackdy,* 22-CR-78 JD, 2023 WL 6805893, at *2 (N.D. Ind. Oct. 16, 2023) (citing cases)[1]. Brady, like the defendants in this Court's other cases, argues that §922(g)(1) violates his Second Amendment right to bear arms. This Court uniformly has denied the challenge and found the statute constitutional. Nothing about this case or any intervening precedent from the Seventh Circuit alters that result here.

    a.    **The Plain Text of the Second Amendment**

In *Bruen*, the Supreme Court rejected the means-end standard long used by courts of appeal to evaluate firearm restrictions under the Second Amendment. The Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen,* 142 S. Ct. at 2129-30. When the Second Amendment's plain text protects certain conduct, the burden shifts to the government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. If the

---

[1] *E.g. United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (upholding § 922(g)(1) as constitutional); *United States v. Clark*, 1:20-CR-49, 2023 WL 2346284 (N.D. Ind. 2023) (Brady, C.J.); *United States v. Tribble*, 2:22-CR-85, 2023 WL 2455978 (N.D. Ind. Mar. 10, 2023) (Simon, J.).

government cannot demonstrate the existence of a historical tradition that would support applying the regulation to the conduct at issue, a court must conclude that the conduct is protected because it falls within the Second Amendment's "unqualified command." *Id.*

The starting point then, is the text of the Second Amendment which provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. A trilogy of Supreme Court cases have defined the scope of this right, beginning with *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010), and ending just last year with the *Bruen* decision. The answer to whether a felon is in the class of persons protected by the plain text of the Second Amendment is found in all three Supreme Court precedents and in the opening sentence and concluding paragraph of *Bruen*.[2]

In *Heller*, the Court repudiated the notion that anything in their opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. Two years later in *McDonald*, the majority opinion emphasized *Heller*'s holding:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.*, at 626 – 627, 128 S.Ct., at 2816–2817. We repeat those assurances here.

*McDonald*, 561 U.S. at 786.

Now, the Supreme Court has said it a third time in *Bruen*. In the opening sentence, the majority opinion reaffirms the Second and Fourteenth Amendment right of an "ordinary, law-

---

[2] The answer can also be found in the Seventh Circuit's decision in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019). In *Kanter,* the Seventh Circuit found §922(g)(1) constitutional, holding that the prohibition on the possession of firearms by felons—even those convicted of nonviolent felonies—to be presumptively lawful. *Kanter*, 919 F.3d at 448.

abiding citizen to possess a handgun in the home for self-protection" recognized in *Heller* and *McDonald*. 142 S. Ct. at 2122 (emphasis added). The concept that constitutionally protected gun rights apply to "law-abiding citizens" is repeated in the second sentence of *Bruen* as well as over a dozen additional times throughout the majority opinion. See id. at 2125–2156. It is also echoed in the concluding paragraph, "New York's proper-cause requirement violates the [Constitution] in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156 (emphasis added).

This same "law-abiding citizen" language is mirrored in the concurring opinions of the Justices, *see* id. at 2159 (Alito, J., concurring) ("[a]ll we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home ... "); *i*d. at 2162 (Kavanaugh, J., concurring) ("'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ....'").

Given the great care that the *Bruen* Court used to underscore that the Second Amendment protects the rights of "law-abiding" citizens to keep and bear arms, the Court sees no avenue for the Defendant here to argue that §922(g)(1), prohibiting his possession of a firearm as a felon (a non-law-abiding citizen), violates the Second Amendment even under *Bruen'*s new guidance. The Supreme Court made clear that it was reaffirming its prior holdings in *Heller* and *McDonald* which recognize that felons are not among "the people" entitled to bear arms. Thus, this Court finds that the Second Amendment's text does not protect the right of felons to possess firearms.

  b.  <u>**History and Tradition**</u>

But even assuming the Second Amendment's plain text does cover Brady, the Government has still met its burden in showing that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment. *Bruen*, 142 S. Ct. at

2126. Although this Court has declined in its other cases to undertake the punishing task of playing Constitutional historian to analyze whether felon-in-possession statutes have sufficient grounding in historical tradition to withstand a *Bruen* challenge, see *United States v. Love*, 647 F. Supp. 3d 664, 670 (N.D. Ind. 2022) (noting "the problems with *Bruen*'s game of historical Where's Waldo are academic" in the context of §922(g)(1)), the Seventh Circuit suggests the Court must do so. *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023). In *Atkinson*, the Seventh Circuit clarified that a district court must engage in a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" to determine if "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Atkinson*, 70 F.4th at 1021–22 (7th Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2133). Thus, the government must present historical analogues to show there is a tradition of limiting the right to keep and bear arms that is aligned with § 922(g)(1).

The Government's brief, similar to others it has filed in this Circuit, provides a detailed basis for its belief that history and tradition limited the right of felons to keep and bear arms. In *United States v. Gates*, our colleague in the Northern District of Illinois, relying on similar government briefing as the one filed here, persuasively explained why § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation., 2023 WL 5748362, at *5–9 (N.D. Ill. Sept. 6, 2023).

*Gates* explained, and the Government argues here, that two categories of historical analogues to modern-day-felony dispossession statutes: (1) "laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms" and (2) "laws authorizing capital punishment and estate forfeiture for felonies." *Gates,* 2023 WL 5748362, at *6 ;(Gov't's Brief, ECF No. 24 at 11–17). The former category of regulations, which *Gates* called

5

"shameful," included Catholics who refused to renounce their faith, Native Americans, Blacks, and others "who failed to demonstrate loyalty to the government." *Id. Gates* found that "[t]hough these categorical bars on possession would, of course, be unconstitutional today (and are and were shameful), the regulations do evince a historical tradition of categorically disarming groups—including those deemed 'dangerous'—at the time of the ratification of the Bill of Rights." For the latter category of laws *Gates* concluded, "[a]s a matter of logic and experience, it makes sense that these extensive and exhaustive penalties for felonies—outright capital punishment and the forfeiture of all property—qualify as powerful evidence that mere firearms dispossession of felons is a 'comparable burden,' as *Bruen* frames the standard, 142 S. Ct. at 2133, to historical punishments for felonies." *Id.* Thus, *Gates* found the laws cited by the government constituted historical analogues.

Most recently, in *United States v. Hardy*, 2023 WL 6795591, at *6 (N.D. Ill. Oct. 13, 2023) and *United States v. Johnson* 2023 WL 7284848, at *6 (E.D. Wis. Nov. 3, 2023), two more district judges have determined that the Government has met its burden of producing historical analogues to felon dispossession laws, even if such laws were not "historical twins." To the extent *Atkinson* requires a "fulsome analysis" that has been done in *Gates* and confirmed in *Hardy* and *Johnson*. There is no need for this Court to reinvent the wheel only to say what has already been eruditely said before. Accordingly, the Court now goes on record as being on the side of the holding in *Gates* as confirmed by the holdings in *Hardy* and *Johnson*. The dispossession of firearms by felons is enmeshed in the Second Amendment's history and tradition and is therefore, a constitutional restriction on the right to bear arms.

## CONCLUSION

The Defendant's Motion to Dismiss Count 5 (ECF No. 22) is DENIED.

SO ORDERED on November 13, 2023

>s/ *Holly A. Brady*
>CHIEF JUDGE HOLLY A. BRADY
>UNITED STATES DISTRICT COURT